O

# United States District Court
# Central District of California

| | |
|---|---|
| TIMOTHY R. PANNABECKER,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK N.A. as TRUSTEE for the CSMC MORTGAGE BACKED TRUST SERIES 2006-2; CERTIFICATEHOLDERS OF THE CSMC MORTGAGE-BACKED TRUST SERIES 2006-2; CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.; CAL-WESTERN RECONVEYANCE, LLC; AMERICA'S SERVICING COMPANY; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS; ROES 1-10 and DOES 1- 10, inclusive, representing a class of unknown persons who claim or have the right to claim an interest in certain real property located in Upland, California,<br><br>Defendants. | Case No. 5:14-cv-00788-ODW-VBK<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [16]** |

## I.  INTRODUCTION

The instant action is Plaintiff's final attempt to remain in his home. On September 15, 2014, Defendants filed a Motion to Dismiss the Second Amended

Complaint and Request for Judicial Notice in Support of the Motion. (ECF No. 16.) On September 29, 2014, Plaintiff filed an Opposition to the Motion to Dismiss. (ECF No. 19.) For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss. (ECF No. 16.)

## II. FACTUAL BACKGROUND

On September 8, 2005, Timothy R. Pannabecker purchased Lot 12 of Tract No. 9690 ("Property") in the City of Upland located in San Bernardino County, California.[1] (ECF No. 16, Ex. 3.) On October 19, 2005, Plaintiff obtained a loan in the principal amount of $560,000 from Credit Suisse First Boston Financial Corporation ("Credit Suisse"). (*Id.*, Ex. 4.) The loan was secured by a Note and Deed of Trust. (ECF No. 13, Ex. 1.)

On March 5, 2010, U.S. Bank N.A. filed a Notice of Default against Plaintiff. (ECF No. 16, Ex. 6.) On April 16, 2010, an assignment of the Deed of Trust was executed by Mortgage Electronic Registration Systems ("MERS"), assigning all beneficial interest under the Deed of Trust to U.S. Bank as trustee of CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-2. (ECF No. 13, Ex. 2) On June 10, 2010, a Notice of Sale was recorded. (ECF No. 16, Ex. 7.) On July 2, 2010, a Notice of Rescission was recorded. (*Id.*, Ex. 8.)

On December 19, 2012, Plaintiff defaulted a second time. (*Id.*, Ex. 9.) Two Notices of Sale were recorded. (*Id.*, Exs. 10–11.) The first was recorded on April 8, 2013 and the second, on April 1, 2014. (*Id.*) On April 25, 2014, three days after Plaintiff filed suit, the Property was sold at a foreclosure sale to U.S. Bank. (*Id.*, Ex. 12.)

On April 22, 2014, Plaintiff filed a Complaint asserting fifteen causes of action.[2] (ECF No. 1.) On May 16, 2014, Plaintiff filed his First Amended Complaint

---

[1] This lot designation of property comes from a map recorded in Book 137, Page 27 of Maps in the Office of the Recorder for San Bernardino County.

[2] Plaintiff's Complaint, First Amended Complaint, Second Amended Complaint, and Opposition were all filed *pro se*. After filing these documents, Plaintiff obtained counsel.

adding three causes of action. (ECF No. 11.) On July 3, 2014, Plaintiff filed a Second Amended Complaint removing Internal Revenue Service as a Defendant and adding MERS as a Defendant. (SAC ¶ 20.) The Second Amended Complaint contains nineteen causes of action. (*Id.* ¶¶ 77–244.) The first eleven causes of action seek declaratory relief. (*Id.* ¶¶ 77–122.) Plaintiff's remaining causes of action are the following: (12) Cancellation of Instruments; (13) Fraud and Deceit; (14) violation of New York General Business Law § 349 (the "Deceptive Practices Act"); (15) violation of California Business and Professions Code § 17200, *et seq.*; (16) declaratory relief to determine status of Defendants' causes of action under 28 U.S.C. §§ 2201, 2202; (17) violation of 15 U.S.C. § 1692e; (18) violation of 15 U.S.C. § 1641(g); and (19) Statutorily Defective Foreclosure. (*Id.* ¶¶ 123–244.)

On September 15, 2014, Defendants U.S. Bank and Wells Fargo Bank, N.A. dba America's Servicing Company ("Wells Fargo") filed a Motion to Dismiss and a Request for Judicial Notice. (ECF No. 16.) Defendants filed the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing that Plaintiff failed to state a cause of action upon which relief can be granted. (Mot. 15.) Defendants' arguments include: MERS was authorized to transfer the Note and Deed of Trust, Plaintiff lacks standing to challenge the possible violation of a Pooling and Servicing Agreement, and Plaintiff's case theory—based on *Glaski v. Bank of America*, 218 Cal. App. 4th 1079 (2013)—is misplaced. (*Id.* at 6.) Defendants further argue that Plaintiff has not stated a cause of action for fraud, unfair competition, unfair debt collection practices, a cause of action under TILA, or wrongful foreclosure. (*Id.* at 8–13.) Since Plaintiff has not clearly stated a cause of action, Defendants argue, Plaintiff is not entitled to declaratory relief. (*Id.* at 15.)

On September 29, 2014, Plaintiff filed an Opposition to Defendants' Motion. (ECF No. 19.) Plaintiff explains that he seeks declaratory relief because "the VOID assignments recorded in the San Bernardino County Recorder's Office are Prima Facie evidence that there is indeed a controversy." (*Id.* at 7.) Plaintiff further argues

1 that he has standing to assert the breach of the Pooling and Servicing Agreement and
2 Prospectus as a third party under New York trust law. (*Id.* at 7, 10.) Plaintiff also
3 argues that the Notice of Default was never served. (*Id.* at 13.) This argument is
4 based on misspellings of his name in the Notice of Default. (*Id.* at 12–13.)

Defendants request that the Court take judicial notice of ten exhibits that document the history of ownership and assignment of the Property. The documents provide a timeline of Plaintiff's purchase of the Property to U.S. Bank's purchase at the foreclosure sale. (ECF No. 16, Ex. 2.)

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

*Pro se* pleadings are held to less stringent standards than those drafted by

lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, "a liberal interpretation of a pro se . . . complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations . . . are not sufficient to withstand a motion to dismiss." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 2010) (citing *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.  DISCUSSION

Plaintiff's case is based on the premise that the April 16, 2010 assignment of the Deed of Trust into a securitized trust after the trust's closing date was invalid, thus vitiating Defendants' standing to enforce the Deed of Trust and foreclose. Defendants argue Plaintiff fails to plead a cognizable legal theory. The Court will address each of Plaintiff's allegations and Defendant's arguments.

**1.      MERS' Authorization to Assign the Deed of Trust**

In California, MERS is authorized to transfer a note and deed of trust. *Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) ("MERS has standing to foreclose as the nominee for the lender and beneficiary of the Deed of Trust and may assign its beneficial interest to another party."); *see also Siliga v. Mortgage Electronic Registration System, Inc.*, 219 Cal. App. 4th 75, 83–84 (2013) ("The deed of trust itself, attached to [Plaintiffs'] complaint, establishes as a factual matter that MERS has the authority to exercise all of the rights and interests of the

lender."). Under California law, MERS' authority as nominee of the lender is outlined in its agency agreement with the lender. *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270–71 (2011) ("The extent of MERS's authority as a nominee was defined by its agency agreement with the lender, and whether MERS had the authority to assign the lender's interest in the note must be determined by reference to that agreement.").

Here, Plaintiff alleges that MERS, as a nominee of the lender (opposed to beneficiary), does not possess the authority to assign the Note and Deed of Trust. (SAC ¶¶ 35–36.) However, the first page of the Deed of Trust states in bold, "MERS is the beneficiary under this Security Instrument." (ECF No. 16, Ex. 4.) On the third page, the Deed of Trust further states, "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument." (*Id.*)

The language outlined in the Deed of Trust explicitly conveys to MERS the authority to assign the Deed of Trust. Plaintiff's assertion that MERS lacks authority to assign is contradicted by the plain text of his own Deed of Trust. Therefore, the Court finds that MERS possessed proper authority to assign the beneficial interest to U.S. Bank.

**2.     Standing to Challenge the Pooling and Servicing Agreement**

"[N]umerous courts have recognized, 'borrowers who were not parties to the assignment of their deed-and whose rights were not affected by it-lack . . . standing to challenge the assignment's validity because they had not alleged a concrete and particularized injury that is fairly traceable to the challenged assignment.'" *McIntyre v. Alt. Loan Trust 2006-OC10*, No. 2:13-CV-1597, 2015 WL 692243, at *3 (E.D. Cal.

Feb. 18, 2015) (quoting *Marques v. Fed. Home Loan Mortg. Corp.*, No. 12-CV-1873, 2012 WL 6091412, at *4 (S.D. Cal. Dec. 6, 2012)).

"As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [Plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions." *Jenkins v. JP Morgan Chase Bank*, *N.A.*, 216 Cal. App. 4th 497, 515 (2013). The Court finds *Jenkins* instructive to the instant case. Because the *Jenkins* court found that plaintiff lacked standing to challenge the Pooling and Servicing Agreement, plaintiff was not entitled to declaratory relief. (*Id.* at 514.)

Here, Plaintiff argues that he has standing under New York EPTL § 7-2.4 to void the Pooling and Servicing Agreement to which he is not a party. (Opp'n 10.) Plaintiff concedes that normally a third party to a securitization contract lacks authority to invalidate the contract, but claims that he falls within an exception. (*Id.*) A borrower can void a securitization contract if there is confusion over the ownership of the trust. (*Id.*) The purpose of this exception is to prevent the possibility of multiple parties collecting on the same debt. (*Id.*) Plaintiff defaulted on the loan. (ECF No. 16, Ex. 9.) Plaintiff failed to pay *any* party, let alone multiple parties. As a result, Plaintiff's rights as borrower were unaffected, and he failed to demonstrate a concrete and particularized injury in his Second Amended Complaint. Therefore, the Court finds that Plaintiff does not have standing as he does not fall within any exception.

### 3. *Glaski v. Bank of America*

Plaintiff's allegations are based on a theory held in the case, *Glaski v. Bank of America*, 218 Cal. App. 4th 1079 (2013). In *Glaski*, the court held that a securitized mortgage trustee's attempt to accept a loan after the trust's closing date was void under New York law. (*Id.* at 1097.) In addition, a borrower can challenge a transfer of a deed of trust if it is void. (*Id.* at 1099.)

*Glaski* has been rejected by the majority of courts in California. *Boza v. U.S. Bank Nat. Ass'n*, No. LA CV 12-06993, 2013 WL 5943160 at *7 (C.D. Cal. Oct. 18, 2013) ("More recently, other district courts have declined to follow *Glaski,* noting that it is 'in a clear minority' on the issue of standing."); *see also Gates v. LPP Mortg., Inc.*, No. CV 13-8737, 2013 WL 6978834 at *2 n.4 (C.D. Cal. Dec. 30, 2013) ("Although a contrary rule was stated in *Glaski v. Bank of Am., Nat'l Ass'n,* 218 Cal. App. 4th 1079, 160 Cal. Rptr. 3d 449 (2013), the Court declines to follow this minority view."); *Newman v. Bank of New York Mellon*, No. 1:12-CV-1629, 2013 WL 5603316, at *3 n.2 ("[N]o courts have yet followed *Glaski* and *Glaski* is in a clear minority on the issue.").

This Court follows the majority of courts and rejects *Glaski*. Therefore, the Court finds that Plaintiff lacks standing to assert causes of action for declaratory relief (Causes of Action 1–11, 16) and his cause of action for cancellation of instruments (Cause of Action 12).

**4.     Fraud and Deceit**

Plaintiff alleges that he was defrauded by Defendants because Defendants were not authorized to foreclose on the Property. (SAC ¶¶ 136–38.) As discussed above, MERS was authorized to assign the Deed of Trust; thus, Defendants were authorized to foreclose on the Property. Therefore, the Court finds this cause of action has no merit.

**5.     Unfair Competition – New York and California**

Plaintiff alleges that Defendants violated New York General Business Law § 349. (SAC ¶ 141.) Plaintiff fails to explain the applicability of this New York state law to this case. Therefore, the Court rejects this cause of action.

Plaintiff further alleges that Defendants violated California's Unfair Competition laws as outlined in Cal. Bus. & Prof. Code § 17200 *et seq*. (SAC ¶ 149.) "[T]he breadth of § 17200 does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those

causes of action as ones for unfair competition." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (citing *Cel-Tech Commc'ns Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). In addition, a cause of action for relief under unfair competition law depends on the outcome of its underlying cause of action. *See Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) ("[T]hese claims . . . stand or fall depending on the fate of the antecedent substantive causes of action."). Similarly, if there is a defense to the underlying violation of law, it also applies to the unfair competition law cause of action. *See id.*

Plaintiff alleges that Defendants' fraudulent business practices bring them within the scope of violating California Unfair Competition law. (SAC ¶¶ 148–49.) However, as New York General Business Law § 349 is inapplicable in California, Plaintiff fails to state an underlying cause of action alleging fraudulent business practices. Similarly, any fraudulent activity that Plaintiff asserts relies on the theory that the April 16, 2010 assignment of the Deed of Trust and subsequent securitization were invalid. (SAC ¶¶ 156–62.) As Plaintiff has failed to assert an underlying cause of action to the Unfair Competition law, the Court rejects this cause of action.

**6. Unfair Debt Collection Practices**

Plaintiff alleges that Defendants violated the Federal Debt Collection Practices Act ("FDCPA") for attempting to collect Plaintiff's debt obligation. "To be held liable for violation of the FDCPA, a defendant must—as a threshold requirement—fall within the FDCPA's definition of 'debt collector.'" *Izenberg v. ETS Services*, 589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2009). "[T]he law is well-settled . . . that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Hepler v. Washington Mut. Bank, F.A.*, No. CV 07-4804, 2009 WL 1045470, at *4 (C.D. Cal. April 17, 2009) (quoting *Scott v. Wells Fargo Home Mortg.*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003).

Here, Defendants are a mortgage servicing company. Since mortgage servicing

companies are not considered debt collectors under the FDCPA, the Court rejects Plaintiff's cause of action.

### 7. Truth in Lending Act ("TILA")

Plaintiff alleges that Defendants violated the TILA, 15 U.S.C. § 1641(g), by not notifying him within thirty days of assigning the Note and Deed of Trust. (SAC ¶ 212.) A violation under 1641(g) is subject to civil damages. 15 U.S.C. § 1640(a). However, a cause of action for damages under TILA must commence "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986) ("[A]s a general rule the limitations period starts at the consummation of the transaction.").

Here, the assignment of the Deed of Trust occurred on April 16, 2010 commencing the period of limitation to last until April 16, 2011. This action was first filed on April 22, 2014, more than three years past the acceptable filing period. Therefore, the Court cannot grant relief to Plaintiff under TILA because the statute of limitations has expired.

### 8. Wrongful Foreclosure

Plaintiff alleges that Defendants wrongfully foreclosed his Property on the basis that MERS was never authorized to assign the Deed of Trust. (SAC ¶¶ 223–25.) Plaintiff further alleges that the assignment and subsequent foreclosure were void because the Deed of Trust was assigned after the closing date outlined in the Pooling and Servicing Agreement. (*Id.* ¶¶ 226–28.)

As discussed above, MERS was authorized to assign the Deed of Trust, and Plaintiff lacks standing to challenge the validity of the Pooling and Servicing Agreement as a third party. Therefore, the Court rejects Plaintiff's Statutorily Defective Foreclosure cause of action.

### 9. Notice of Default

Plaintiff alleges that he was never served Notice of Default because it was addressed to Timothy Pannebecker with an "e," not Pannabecker with an "a." (Opp'n

12–13.) Plaintiff alleges that a notice of default was never served, mailed, or posted on his property properly addressed to Timothy Pannabecker. (Opp'n 13.) The Notice of Default states that Wells Fargo "tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation." (ECF No. 16, Ex. 9.) Despite the misspelling, Plaintiff's address was clearly marked on the Notice of Default. The misspelling of Plaintiff's name by one letter does not render service of the Notice of Default void.[3] The Court finds this argument has no merit.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss. The Court finds that the defects in Plaintiff's Second Amended Complaint cannot be cured by amendment and, therefore, **DENIES Plaintiff Leave to Amend**. (ECF No. 16.)

**IT IS SO ORDERED.**

March 5, 2015

  _____
             **OTIS D. WRIGHT, II**
      **UNITED STATES DISTRICT JUDGE**

---

[3] Plaintiff had sufficient notice that Wells Fargo filed a Notice of Default against him—the resident living at the address listed on the Notice of Default who had not paid his mortgage.